IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 08-cv-00248-REB-BNB
(Consolidated with Civil Action No. 08-cv-00359-REB-BNB)

WHITE RIVER VILLAGE, LLP,

    Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,

    Defendant/Third-Party Plaintiff,

v.

JONATHAN REED & ASSOCIATES, INC., et al.,

## ORDER CONCERNING MOTIONS TO COMPEL ARBITRATION

**Blackburn, J.**

This matter is before me on the following: (1) **Fidelity and Deposit Company of Maryland's Motion To Compel Arbitration and Stay Proceedings Pending Arbitration** [#15][1] filed March 20, 2008; (2) **Combined Response to Fidelity and Deposit Company of Maryland's Motion To Compel Arbitration and Stay Proceedings Pending Arbitration and Plaintiff's and Third-Party Defendants' Cross-Motion To Stay Arbitration** [#17] filed April 4, 2008; and (3) **Defendant Dave Palardy Painting, Inc's Motion To Compel Arbitration and Stay the Claims Asserted Against It Pending Arbitration** [#255], filed January 16, 2009. The parties

---

[1] "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

filed responses [#17, #18, #273] and replies [#18, #20, #274].  The issues presented in these motions are well-briefed, and I have reviewed carefully the parties' arguments and authorities.  I grant Fidelity and Deposit's motion in part, and I deny the motion in part.  I deny the plaintiff's and third-party defendants' motion to stay arbitration.  I grant the motion of Dave Palardy Painting, Inc.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

## II. BACKGROUND

This case originated with two construction contracts that were executed simultaneously and concern related construction projects.  The first contract is between the owner, White River Townhomes, LLC, and Jonathan Reed & Associates, Inc., and the contractor, S & S Joint Venture.  *Fidelity and Deposit's motion to compel* [#15], Exhibit A.[2]  The second contract is between the owner, White River Village, LLP, and Jonathan Reed & Associates, Inc., and the contractor, S & S Joint Venture.  *Exhibit B*.  White River Village, LLP (Village) is the plaintiff in Civil Action No. 08-cv-00248-REB-BNB, and White River Townhomes, LLC (Townhomes) is the plaintiff in Civil Action No. 08-cv-00359-REB-BNB.  These two cases are consolidated, as captioned above.

Fidelity and Deposit Company of Maryland (F & D) is a defendant in both of these consolidated cases.  F & D provided payment and performance bonds for both of the construction contracts.  *Exhibits C & D.*  S & S, the contractor, defaulted on the construction contracts, and F & D, as the surety under the bonds, undertook to complete performance on the contracts.  In their complaints in this case, Village and

---

[2] I will refer to the exhibits attached to the motion to compel arbitration by their exhibit designation only, e.g. Exhibit A.

2

Townhomes allege that F & D failed to fulfill its obligations under the performance bonds after F & D took over the construction projects and sought to complete the projects. Village and Townhomes assert claims for (1) breach of performance bond; (2) bad faith breach of insurance/surety contract; and (3) civil conspiracy. *Complaint* [#2], 08-cv-00248; *Complaint* [#2], 08-cv-00359. In 08-cv-00248, Village asserts also a claim for preliminary and permanent injunction.

When F & D filed its motion to compel arbitration, and before the two cases were consolidated, F & D had asserted counterclaims against Village and third-party claims against Townhomes and Jonathan Reed & Associates, Inc. (Reed & Assoc.). *Fidelity and Deposit Company of Maryland's Answer, Counterclaim, and Third-Party Complaint* [#5], filed February 7, 2008. After the cases were consolidated and the plaintiffs' filed an amended complaint [#67] on August 21, 2008, F & D asserted counterclaims against Village and Townhomes and third-party claims against several third-party defendants, including third-party defendant Reed & Assoc. *Fidelity and Deposit Company of Maryland's Answer to Plaintiffs' Amended Complaint, Counterclaim, and Third-Party Complaint* [#65], filed September 4, 2008. The counterclaims and third-party claims all concern the two construction projects addressed in the contracts between Village, Townhomes and Reed & Assoc., as owners, and S & S as contractor (S & S Contracts). As currently postured, F & D's motions to compel arbitration do not address the arbitrability of claims involving any parties other than Village, Townhomes, Reed & Assoc, and F & D. The motion to compel arbitration filed by Dave Palardy Painting, Inc., addresses one of the third-party claims asserted by F & D.

3

## III. ANALYSIS

### A. Contract Terms

Both S & S Contracts include standard American Institute of Architects forms. Both S & S Contracts include the following terms related to arbitration:

> Section 1.1.2 **The Contract Documents shall not be construed to create a contractual relationship of any kind** (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) **between any persons or entities other than the Owner and Contractor.** (emphasis added).
>
> Section 4.6.1 **Any Claim arising out of or related to the Contract**, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, **shall**, after decision by the Architect or 30 days after submission of the Claim to the Architect, **be subject to arbitration**.
>
> Section 4.6.4 Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. **No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration**.

*Exhibits A & B* (emphasis added). F & D relies on the arbitration provision in the S & S contracts as the basis for its motion to compel arbitration of all claims in this case. Village, Townhomes, and Reed & Assoc. rely on some of the highlighted provisions shown above as part of their argument that arbitration is not appropriate.

Again, F & D issued payment and performance bonds guarantying the obligations of S & S under the S & S contracts. Village and Townhomes' claims in this case are based on F & D's obligations under the performance bonds. The performance

4

bonds include the following terms:

> Paragraph 1 The **Contractor and the Surety**, jointly and severally, **bind themselves**, their heirs, executors, administrators, successors and assigns **in the Owner for the performance of the Construction Contract, which is incorporated herein by reference**.
>
> Paragraph 9 **Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction** in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first.

*Exhibits C & D.* Village, Townhomes, and Reed & Assoc. rely on Paragraph 9 of the bonds to preclude arbitration. I will refer to paragraph 9 of the performance bonds as the "court provision."

## B. Interpretation

F & D argues that all of the claims between and among Village, Townhomes, Reed & Assoc., and F & D are subject to arbitration under the S & S Contracts. F & D argues that the bonds incorporate explicitly the terms of the S & S Contracts, and that those terms are applicable to any claim under the bonds that are related to the S & S Contracts. The plaintiffs allege in their complaint that F & D is liable for construction defects and delays in completing the projects. F & D says these are claims arising out of the S & S Contracts, and, thus, those claims are subject to arbitration under the arbitration clause in the S & S Contracts. In addition, F & D argues that the counterclaims and third-party claims it asserts in this action are claims F & D may assert only by virtue of the fact that F & D has stepped into the shoes of S & S because F & D has undertaken, as required by the bonds, to fulfill S & S's obligations under the S & S Contracts. F & D argues that because it is seeking to enforce the terms of the S & S Contracts via F & D's counterclaims and third-party claims, those claims are subject to

5

the arbitration provision of the S & S Contracts.

Village, Townhomes, and Reed & Assoc. argue that the claims asserted by Village and Townhomes are claims seeking to enforce F & D's obligations under the bonds and that the bonds contemplate explicitly that "(a)ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction . . . ." *Exhibits C & D*, ¶ 9. They argue that under this provision arbitration is not appropriate. Village, Townhomes, and Reed & Assoc. argue that the provision in the bonds that incorporates the S & S Contracts is meant to define the scope of the surety's obligations under the bonds in the event of a default by S & S and is not intended to include the arbitration clause as part of those obligations.

The claims of Village and Townhomes against F & D are claims to enforce the terms of the bond. Again, Village and Townhomes assert, *inter alia*, claims for breach of performance bond and a claim for bad faith breach of insurance/surety contract. Absent F & D's obligations under the bonds, and S & S's default, Village and Townhomes would have no basis to assert claims against F & D. Of course, the S & S Contracts, the performance of which is guaranteed under the bonds, are incorporated explicitly into the bonds. The S & S Contracts define the obligations of F & D if F & D is called on to complete S & S's obligations after S & S has defaulted. Both the terms of the bonds and the terms of the S & S Contracts must be considered to resolve the claims against F & D. Viewed together, the S & S Contracts and the bonds include terms about dispute resolution that are in conflict. The S & S Contracts require arbitration. The bonds say nothing about arbitration, but explicitly contemplate resolution of disputes in any court of competent jurisdiction.

When faced with conflicting provisions in a contract, a court should adopt, if

6

possible, a reasonable interpretation of the contract that gives effect to all its provisions. *5 Arthur L. Corbin, Corbin on Contracts* § 24.23 (1998). [W]hen two clauses of a contract are in apparent conflict, the clause that gives effect to the primary purpose of the contract will control. **Fenimore v. Stauder**, 527 P.2d 943, 946 (Colo. App. 1974). Here, nearly all conceivable proceedings to enforce the bonds would implicate the S & S Contracts because the only purpose of the bonds is to guarantee the performance of the S & S Contracts, and F & D's surety obligations are defined by the S & S Contracts, If I were to conclude, as suggested by F & D, that the claims of Village and Townhomes must be seen claims under the S & S Contracts that are subject to the arbitration provision in those contracts, then the court provision in the bonds is left without any practical effect. Thus, if there is a reasonable alternative interpretation that gives effect to the court provision of the bonds, then I must adopt that interpretation.

I conclude that there is a reasonable interpretation of these conflicting contract provisions that gives effect to both the arbitration provision of the S & S Contracts and the court provision of the bonds. Obviously, the arbitration provision of the S & S Contracts would control in a dispute between the owner, Village, Townhomes, and/or Reed & Assoc., and the contractor, S & S. In that circumstance, obligations imposed by the bonds would not be implicated. If the dispute is an effort to enforce the surety's obligations under the bonds, then the court provision of the bonds controls. This interpretation of the bond is reasonable because the primary purpose of the bond is to impose obligations on the surety for the benefit of the owner, Village, Townhomes, and Reed & Assoc., if there is a default on the underlying contract. Further, the court provision of the bonds expressly contemplates a proceeding under the bonds as a proceeding concerning contractor default or the surety's refusal or failure to perform its

7

obligations under the bond. *Exhibits C & D*, ¶ 9. Village and Townhomes' claims here assert that F & D, as surety, has failed fully to perform its obligations under the bond after a contractor default. A claim seeking to enforce the surety's obligations is fully dependent on the terms of the bond, implicates the primary purpose of the bonds, and is precisely the type of claim expressly contemplated by the court provision of the bonds. Finally, this interpretation is supported further by the term of the S & S Contracts, which provide that the "Contract Documents shall not be construed to create a contractual relationship of any kind . . . between any persons or entities other than the Owner and Contractor. *Exhibits A & B*, Section 1.1.2 (quoted above).

The more difficult question arises when F & D, as surety, steps into the shoes of S & S, as permitted by the bonds, and F & D asserts claims seeking to enforce the obligation of others under the S & S Contracts. This is the posture of F & D's counterclaims and third-party claims in this case against Village, Townhomes, and Reed & Assoc. In view of the conflicting provisions of the relevant contracts, the key question as to these claims is whether F & D's claims implicate predominantly the primary purpose of the S & S Contracts or the primary purpose of the bonds? I conclude that these claims implicate predominantly the primary purpose of the S & S Contracts, while implicating the purpose of the bonds only incidentally. In this circumstance, the obligations being enforced by F & D are not created by the bond, but are created solely by the terms of the S & S Contracts. In this circumstance, the only role of the bond is to give F & D standing, as surety, to enforce the S & S Contracts against those with obligations under the contracts. The fact that the bonds give F & D standing to enforce the contracts is an incidental contractual purpose when compared to the purpose of enforcing the terms of the S & S Contracts against those with obligations under the

contracts. F & D's claims seeking to enforce the S & S Contracts, therefore, are covered by the arbitration provision of the S & S Contracts.

I have reviewed the authorities cited by the parties and note that courts have reached various conclusions about the effect of an incorporation clause in circumstances similar to this case. My conclusions in this case are based on the specific terms of the contracts at issue and standard principles of contract interpretation. I conclude also that none of the authorities cited by the parties addresses directly the key issue here: whether the claims of F & D, standing in the shoes of S & S and seeking to enforce the S & S Contracts, are covered by the arbitration provision of the contracts or the court provision of the bonds.

As to the proper treatment of the claims of Village and Townhomes against F & D, I agree with the analysis in ***AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA*** 242 F.3d 777, 781 (8th Cir. 2001). In ***AgGrow Oils***, the court analyzed a bond that included a court provision essentially identical to the court provision in the bonds at issue here. ***AgGrow Oils***, 242 F.3d at 780. The ***AgGrow Oils*** bond incorporated an underlying construction contract, and the construction contract contained a broad arbitration provision. ***Id***. The ***AgGrow Oils*** court found that it was not clear that the incorporation clause in the bond reflected an agreement between the owner and the surety to arbitrate their disputes under the bond and that the implication of any such agreement "seems to be negated by the bond provision referring to the judicial resolution of disputes and by the provision in the Construction Contract that it 'not be construed to create a contractual relationship of any kind ... between any persons or entities other than [owner and contractor].'" ***AgGrow Oils***, 242 F.3d at 781.

The ***AgGrow Oils*** court concluded that these provision were ambiguous. ***Id***.

9

Resolving the ambiguity, the court concluded that the purpose of the incorporation clause in the bond was to define the extent of the surety's obligation and that, in the face of the court provision in the bond, the incorporation provision could not be read as an agreement by the owner and the surety to arbitrate:

> Mindful of the fundamental principle that arbitration under the Federal Arbitration Act is a matter of consent, not coercion, we are unwilling to construe an incorporation clause whose obvious purpose was to clarify the extent of the surety's secondary obligation as also reflecting a mutual intent to compel arbitration of all disputes between the surety and the obligee [owner] under the bond.

*Id*. at 782. The same analysis applies in this case.

### C. Application

With this interpretation of the applicable contract provisions, I am faced with some claims that are covered by an arbitration agreement. Those claims are F & D's claims seeking to enforce the terms of the S & S Contracts against Village, Townhomes, and Reed & Asoc.[3] On the other hand, Village and Townhomes' claims against F & D are not covered by an arbitration agreement. All of these claims concern the parties' obligations concerning the Village and Townhomes construction projects.

Although the parties' jurisdictional allegations are based on diversity of citizenship, the terms of the Federal Arbitration Act govern the parties' arbitration agreement and their enforcement by the court. **See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.**, 460 U.S. 1, 24 - 25 and n. 32 (1983).

9 U.S.C. § 3, part of the Federal Arbitration Act, provides,

If any suit or proceeding be brought in any of the courts of the United

---

[3] I note that Reed & Assoc. argues that it is not a party to the arbitration agreement in the S & S Contracts. *Response* [#17], p. 5 n. 1. however, Jonathan Reed & Associates, Inc., executed both of the S & S Contracts as general partner of Village and Townhomes, and as an owner. *Exhibits A & B*, CM/ECF page 6. Thus, I conclude that Reed & Assoc. is a party to the arbitration agreements.

> States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Under 9 U.S.C. § 4, the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms" of an agreement to arbitrate a dispute if "the making of the agreement for arbitration or the failure to comply therewith is not in issue . . ." **See also, Shearson/American Express, Inc. v. McMahon**, 482 U.S. 220, 226 (1987) (holding that Section 3 of the FAA provides that a court "must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement"). There is a strong federal policy favoring arbitration of disputes. **Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 23 n. 27 (1983). I conclude that the arbitration agreements must be enforced.

These circumstances present two alternatives. First, I may permit the claims subject to arbitration to proceed to arbitration while permitting the claims subject to litigation to proceed in parallel. Second, I may stay the claims subject to litigation pending completion of the arbitration. **See, e.g., AgGrow Oils**, 242 F.3d at 782 - 783 (district court has discretion to stay litigation involving questions of fact common to related claims that are subject to arbitration). In this case, F & D asserts in its counterclaims and third-party claims against Village, Townhomes, and Reed & Assoc. that F & D has performed its obligations under the S & S Contracts and, thus, is entitled to payment of the sums Village and Townhomes agreed to pay under the contracts. Resolution of these claims will, of course, inform the viability of Village and Townhomes' claims that F & D has not performed its obligations under the S & S Contracts, and,

11

thus, F & D has defaulted on its obligations under the bonds. Given the requirements of the parties' contracts, it would be most efficient to resolve in arbitration F & D's claims against Village, Townhomes, and Reed & Asssoc. before resolving Village and Townhomes' claims against F & D.

Finally, I note that my resolution of the parties' motions results in piecemeal litigation. In this case, the piecemeal approach is not the most efficient approach. Rather, it would be more efficient to resolve the parties' closely related claims in one proceeding. When a binding agreement to arbitrate exists, however, efficiency does not trump the agreement. "The preeminent concern of Congress in passing the [Federal Arbiration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation . . . ." **Dean Witter Reynolds, Inc. v. Byrd**, 470 U.S. 213, 221 (1985).

## D. Conclusion

Interpreting the conflicting provisions of the applicable contracts, I conclude that the counterclaims and third-party claims asserted by F & D against Village, Townhomes, and Reed & Assoc. are controlled by the arbitration agreements in the S & S Contracts. On the other hand, I conclude that the claims of Village and Townhomes against F & D are controlled by the court provision of the performance bonds. Under these circumstances, arbitration of the arbitrable claims must take priority, and litigation of Village and Townhomes' claims must be stayed.

## IV. DAVE PALARDY PAINTING

Third-party defendant Dave Palardy Painting, Inc., was brought into this case when F & D filed its amended third-party complaint. *Fidelity and Deposit Company of*

*Maryland's Answer to Plaintiffs' Amended Complaint, Counterclaim, and Third-Party Complaint* [#65] filed September 4, 2008. Palardy contracted with S & S to provide paint services on the White River projects. *Palardy's motion to compel arbitration*, Exhibit 1 (Palardy Contract). F & D alleges in its third-party complaint that, as S & S's assignee and attorney-in-fact, F & D now stands in the shoes of S & S and is entitled to enforce the contractual obligations that Palardy owed to S & S under the contract between S & S and Palardy. *Fidelity and Deposit Company of Maryland's Answer to Plaintiffs' Amended Complaint, Counterclaim, and Third-Party Complaint* [#65] filed September 4, 2008, pp. 30 - 31, 38 - 39. F & D says it asserted its third-party claim against Palardy because "(f)earing incurring duplicative costs and potentially inconsistent results, F & D . . . filed a Third-Party Complaint against those entities, including Palardy, whose faulty work may have contributed to the damages alleged by White River" in White Rivers list of claimed construction defects. *F & D's response* [#273], p. 3.

The contract between Palardy and S & S contains an arbitration clause stating that "any dispute arising between the Contractor and Subcontractor arising out of or related to this Subcontract or alleged breach hereof shall be resolved by binding arbitration." *Palardy's motion to compel arbitration*, Exhibit 1, ¶ 6.1. Palardy argues that, as assignee of S & S's rights under the Palardy Contract, F & D is obligated to comply with the arbitration provisions in that contract. An assignee of a contract stands in the shoes of the assignor. **See, e.g., Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.**, 373 F.3d 1100, 1110 (10th Cir. 2004). The claims asserted by F & D, as S & S's assignee, fall within the scope fo the Palardy Contract's arbitration provision.

13

9 U.S.C. § 3, which is part of the Federal Arbitration Act, is applicable to F & D's claims against Palardy. In its response to Palardy's motion, F & D argues, in essence, that the piecemeal litigation of the various claims at issue in this case is inefficient and could lead to inconsistent results. As one alternative, F & D suggests that the court compel all parties to participate in a global arbitration of all claims at issue in this case. As I have noted, global resolution of the claims in this case, via arbitration or litigation, likely would be the most efficient means of resolving the claims. But, again, "(t)he preeminent concern of Congress in passing the [Federal Arbiration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation . . . ." ***Dean Witter Reynolds, Inc. v. Byrd***, 470 U.S. 213, 221 (1985).

F & D has not cited any persuasive legal authority for its suggested global arbitration, nor has it cited any binding or persuasive authority for its contention that it is not bound by the arbitration agreement in the Palardy Contract. Therefore, I direct that F & D's claims against Palardy proceed to arbitration under the terms of the Palardy Contract.

## V. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Fidelity and Deposit Company of Maryland's Motion To Compel Arbitration and Stay Proceedings Pending Arbitration** [#15] filed March 20, 2008, is **GRANTED** in part;

2. That plaintiffs White River Village, LLP and White River Townhomes, LLC, defendant Fidelity and Deposit Company of Maryland, a Maryland corporation, and third-party defendant Reed and Associates, Inc., are **ORDERED** to proceed to

14

arbitration on Fidelity and Deposit Company of Maryland's counterclaims and third-party claims against White River Village, LLP, White River Townhomes, LLC, and Reed and Associates, Inc., under the terms of the S & S Contracts;

3. That otherwise **Fidelity and Deposit Company of Maryland's Motion To Compel Arbitration and Stay Proceedings Pending Arbitration** [#15] filed March 20, 2008, is **DENIED**;

4. That **Defendant Dave Palardy Painting, Inc's Motion To Compel Aribtration and Stay the Claims Asserted Against It Pending Arbitration** [#255] filed January 16, 2009, is **GRANTED**;

5. That defendant and third-party plaintiff Fidelity and Deposit Company of Maryland, a Maryland corporation, and third-party defendant Dave Palardy Painting, Inc., are **ORDERED** to proceed to arbitration on Fidelity and Deposit's third-party claims against Dave Palardy Painting, Inc., under the terms of the Palardy Contract, Exhibit 1 to **Defendant Dave Palardy Painting, Inc's Motion To Compel Aribtration and Stay the Claims Asserted Against It Pending Arbitration** [#255];

6. That litigation of all other claims and third-party claims asserted in this case is **STAYED** pending the outcome of the arbitrations;

7. That the motion of plaintiffs White River Village, LLP and White River Townhomes, LLC, to stay arbitration, as stated in their **Combined Response to Fidelity and Deposit Company of Maryland's Motion To Compel Arbitration and Stay Proceedings Pending Arbitration and Plaintiff's and Third-Party Defendants' Cross-Motion To Stay Arbitration** [#17] filed April 4, 2008, is **DENIED**; and

8. That within ten (10) days of the resolution of either of the arbitrations

15

addressed in this order, the parties to the arbitration, who also are parties in this case, **SHALL FILE** a notice in this case stating that the arbitration proceeding has been completed and summarizing the result of the arbitration.

Dated March 23, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge