IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 08-cv-00248-REB-MEH
(Consolidated with Civil Action No. 08-cv-00359-REB-BNB)

WHITE RIVER VILLAGE, LLP, and
WHITE RIVER TOWNHOMES, LLC,

    Plaintiffs/Counter Defendants,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND,

    Defendant/Counter Claimant/Third-Party Plaintiff,

and

HEPWORTH-PAWLAK GEOTECHNICAL, INC., a Colorado Corporation,

    Consolidated Defendant,

v.

JONATHAN REED & ASSOCIATES, INC.,
S&S JOINT VENTURE,
CLASS CONSTRUCTION, INC.,
BELLAVISTA BUILDERS,
CRUZAN CONSTRUCTION COMPANY,
RENTERIA ROOFING,
EC CONTRACTORS, LLC,
M.M. SKYLINE CONTRACTING, INC., a/k/a Skyline Contracting,
DEKKER/PERICH/SABATINI, LTD.,

    Third-Party Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant/Third Party Plaintiff Fidelity & Deposit Co. of Maryland's (F&D) Rule 56 Motion for Partial Summary Judgment on its Penal Sum Limitation Defense [filed November 7, 2013; docket #551]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo.

LCivR 72.1C, the matter is referred to this Court for recommendation [docket #553]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Based upon the record contained herein, the Court RECOMMENDS that the District Court **deny** F&D's motion.[1]

## BACKGROUND

This case concerns the construction of a townhouse style apartment complex built in Rifle, Colorado (the "Project"). The Plaintiffs, White River Village and White River Townhomes (hereinafter "White River"), contracted with Third-Party Defendant S&S Joint Venture ("S&S") to construct the Project. At that time, the scheduled completion date for the Project was September 8, 2005, which was later extended to October 22, 2005. On January 23, 2006, White River's attorney issued a demand letter to Defendant/Third-Party Plaintiff Fidelity & Deposit Co. ("F&D"), acting as S&S's surety, advising it of an intention to declare S&S in default.

Thereafter, on March 8, 2006, White River elected to terminate S&S and sent its notice of default and termination of the Project Contract to F&D and to S&S's counsel. In this notice, White River placed demand upon F&D to indemnify it for all costs incurred to complete the Project over and above the contract amount. Pursuant to the terms of the surety bond, F&D elected to take over the Project and chose to retain S&S as its completion contractor. After a number of months, F&D

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

2

determined that S&S was not performing; therefore, it terminated S&S and hired Perini Corporation as its completion contractor.

## I. Procedural History

This action was initiated on February 5, 2008, when Defendant F&D removed the case from Garfield County District Court. Plaintiff White River Village had filed four claims for relief against F&D on January 24, 2008. Docket #1-5. F&D then removed the action and filed an answer, counterclaims against White River Village, and third-party claims against White River Townhomes and Jonathan Reed & Associates. Docket #5. The action proceeded to a Scheduling Conference on June 26, 2008. Thereafter, Judge Blackburn granted the unopposed motion to consolidate this case with Civil Action No. 08-cv-00359-REB-KMT, brought by White River Townhomes against F&D and Defendant Hepworth-Pawlak Geotechnical ("Hepworth), on July 16, 2008. Dockets ## 24, 27. On August 21, 2008, Magistrate Judge Boland granted Plaintiff's motion to amend; thus, an Amended Complaint was filed August 21, 2008 (docket #67) by the White River Plaintiffs against F&D. On September 5, 2008, F&D filed its own amended pleading – an answer to the Amended Complaint, Counterclaims against White River, and a Third-Party Complaint against Jonathan Reed; the contractor S&S; the architect Dekker/Perich/Sabatini, Ltd.; 12 named S&S subcontractors and 10 "John Doe" S&S subcontractors; and three named Perini subcontractors and 10 "John Doe" Perini subcontractors. Docket #65. Against the subcontractors, F&D brings claims of breach of contract, contractual indemnification, breach of express warranty, contribution and negligence. *Id.*

On March 23, 2009, Judge Blackburn granted F&D's motion to compel arbitration of F&D's counterclaims and third-party claims against White River, Jonathan Reed and Dave Palardy Painting, and stayed the litigation of all other remaining claims pending the outcome of the arbitration. Docket #301. Later, on October 4, 2010, Judge Blackburn administratively closed the

case, subject to re-opening for good cause. Docket #338. All pending motions were terminated.

On September 28, 2011, Judge Blackburn re-opened the case for the sole purpose of ruling on two pending motions, then administratively closed the case again in the same order. Docket #399. On March 23, 2012, F&D filed a motion to re-open the case for the limited purpose of ruling on a motion for summary judgment filed the same day. Dockets ##407, 408. On May 18, 2012, White River filed a motion to confirm arbitration award and to stay enforcement of the judgment. Docket #418. Thereafter, on January 29, 2013, F&D filed a "supplemental" motion regarding confirmation of the arbitration award. Docket #426. On March 25, 2013, Judge Blackburn re-opened the case to rule on the pending motions and instructed the undersigned to hold a supplemental scheduling conference. Docket #430. The Scheduling Conference was held on May 2, 2013; due to apparent confusion over the remaining claims and parties in this case, this Court directed the parties to file statements of affirmative claims on or before August 2, 2013. Docket #456.

On July 15, 2013, White River filed its statement of affirmative claims asserting that, in light of Judge Blackburn's March 25 order on F&D's motion for summary judgment, the following claims remain: (1) breach of performance bond, (2) bad faith breach of surety contract, (3) civil conspiracy, and (4) breach of warranty. Docket #457. These claims are limited to damages arising from F&D's alleged failure to remove pre-existing mold prior to replacement of the exterior decks and from F&D's alleged failure to install Tyvek material, including any associated claim for replacement cost damages or liquidated damages. *Id.*; *see also* Order, docket #432 at 15-16. F&D filed a motion to strike White River's statement of affirmative defenses on September 11, 2013 (docket #495); that motion remains pending before the District Court.

Meanwhile, this Court held a supplemental scheduling conference on August 15, 2013 at

which the Court set deadlines for the discovery cutoff and dispositive motions in November 2014. Docket #477. Nevertheless, F&D filed the present motion for partial summary judgment on November 7, 2013, arguing that White River's damages should be limited to the total sum of $4,318,500.00, which is the combined penal sum total of the subject payment bonds. F&D's motion was fully briefed on December 16, 2013. The Court has reviewed the present motion, briefs and all exhibits in this matter and is now fully advised.[2]

## II.     Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to the White River, who is the non-moving party in this matter.

1.     On or about September 16, 2004, S&S entered into a contract with White River Village, LLP to construct twenty-nine affordable rental townhouse-style apartment units and a community building known as the "White River Village." Affidavit of Paul Eaves, November 7, 2013 ("Eaves Affidavit"), ¶ 2, docket #551-2.

2.     On or about September 16, 2004, S&S entered into a contract with White River Townhomes, LLC to construct fifteen rental townhouse style apartment units known as the "White River Townhomes."[3] *Id.*, ¶ 3.

3.     On or about September 21, 2004, F&D, as surety, issued a Performance and Payment Bond on behalf of S&S, as principal, in the amount of $3,010,000, bearing Bond Number 08487094, in favor of White River Village, LLP, as obligee. Said Bonds were issued in relation to the

---

[2] The Court notes that since the present motion was filed, the Court granted permission to White River and F&D to amend their pleadings (dockets #565 and #598); however, the amendments do not affect the analysis of the present motion.

[3] The contracts executed for "White River Village" and "White River Townhomes" are collectively referred to as the "Contract," and the construction projects are collectively referred to as the "Project." White River Village and White River Townhomes are the owners of the Project and are collectively referred to as "White River."

construction of the White River Village in Rifle, Colorado. *Id.*, ¶ 6; *see also* Performance and Payment Bonds, Exhibit 3 to motion, docket #551-3.

4.  On or about September 21, 2004, F&D, as surety, issued a Performance and Payment Bond on behalf of S&S, as principal, in the amount of $1,308,500, bearing Bond Number 08487093, in favor of White River Townhomes, LLC, as obligee. Said Bonds were issued in relation to the construction of the White River Townhomes in Rifle, Colorado. Eaves Affidavit, ¶ 7; *see also* Performance and Payment Bonds, Exhibit 3 to motion, docket #551-3.

5.  On or about March 8, 2006, White River declared S&S in default and made demand upon F&D to complete the Project. Eaves Affidavit, ¶ 9.

6.  Under the terms of the Bonds, when White River has declared a contractor in default and terminated the contractor's right to complete, the surety has five options:

> 4.1  arrange for the contractor, with consent of the owner, to perform and complete the construction contract;
>
> 4.2  undertake to perform and complete the construction contract itself through its agents or through independent contractors;
>
> 4.3  arrange for a replacement contractor acceptable to the owner and pay the owner damages arising from the contractor's default in excess of the contract price;
>
> 4.4.1  waive its right to complete the project and tender the amount owed to the owner; or
> 4.4.2  waive its right to completion, deny liability, and notify the owner of the reasons therefor.

Performance and Payment Bonds, Exhibit 3 at 2, ¶ 4, §§ 4.1- 4.4.2, docket #551-3.

7.  On June 16, 2006, F&D acknowledged its election, "to undertake to perform and complete the construction contract pursuant to paragraph No. 4.2 of the Bond. Zurich is doing so under a full and complete reservation of rights of any and all defenses available to either it or S&S, either at law or in equity." June 16, 2006 Letter, Exhibit D to Eaves Affidavit, docket #551-2 at 26-27; *see also*

White River's Statement of Undisputed Facts, ¶ 4, docket #570 at 4.

8.    Paragraph 6 of the Performance Bonds states in full:

After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2 or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1    The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2    Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3    Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Performance Bond, ¶ 6, Exhibit 3, docket #551-3 at 2.

9.    The Parties did not enter into a Takeover Agreement. Eaves Affidavit, ¶ 9; *see also* White River's Statement of Undisputed Facts, ¶ 5, docket #570 at 4.

## **LEGAL STANDARD**

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *see also Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("[s]ummary judgment is not proper merely because [plaintiff] failed to file a response").

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

## ANALYSIS

In the present motion, F&D seeks an order from the District Court finding that (1) White River's damages are limited to the combined penal sum set forth in the subject performance bonds, and (2) White River's damages are limited to a total of $19,251.83, which is the difference between the combined penal sum of $4,318,500.00 minus the costs of $4,299,248.17 allegedly paid by F&D

to complete the Project. This Court will analyze each request in turn.

## I. Penal Sum Limitation

Citing Tenth Circuit law, F&D argues that any damages White River has incurred from S&S's performance and eventual default on the construction contracts are limited to the combined penal sum limitations of the performance bonds under which F&D has performed to complete the Project. White River counters that, when F&D took over and agreed to complete S&S's contract, F&D waived the penal sum limitation of the bonds according to Tenth Circuit precedent and did not protect itself from waiver by failing to "include an absolute limitation on liability to the penal sum of the bond in its documents and communications with White River." Response, docket #570 at 17. F&D replies that White River improperly relies on case law that has been superceded, but that even if White River's analysis of the prevailing law is correct, F&D did not waive the penal sum limitation because it properly reserved its defense that its liability is limited to the penal sum of its bonds.

First, the Court agrees with White River that the opinion in *McWaters v. United States*, 272 F.2d 291 (10th Cir. 1959) remains good law on point in this case and was not superceded by the opinion in *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063 (10th Cir. 2008). In *McWaters*, the Tenth Circuit was asked to review the correctness of a judgment in favor of a contractor and its surety against a subcontractor who defaulted in the performance of a construction contract (Clark) and his surety (American Surety Company) for damages in excess of the penal limitation in a performance bond issued by American Surety. *McWaters*, 272 F.2d at 295. American Surety challenged the judgment raising two defenses: (1) it had already expended more in the discharge of its liability under its bond than the maximum amount of its liability in the sum of $69,000; and (2) the action was not timely filed. *Id.* With respect to the first defense, the

9

*McWaters* court held:

> Without detailing the evidence, we content ourselves by saying there is evidence to sustain the [trial] court's finding of fact that American Surety Company took over Clark's contract and agreed to complete it. That would, of course, subject itself to full liability for all amounts incurred in furnishing labor and material in the completion of the job, irrespective of the $69,000 liability limitation in its bond. The court, accordingly, correctly concluded, as a matter of law, that by such action American Surety Company waived the penalty limitation of its bond.

*Id.* The court also asserted that "[w]hen American Surety Company agreed to complete the contract, it stepped into the shoes of the subcontractor and, by operation of law, became liable to the full extent of his liability." *Id.* at 296.[4] Despite its holding rejecting American Surety Company's first defense, the court proceeded to accept American Surety's second defense that the claim was untimely filed and reversed the judgment. *Id.* at 297.

In *Morrison Knudsen*, by contrast, the Tenth Circuit was asked to determine whether the language in a supersedeas bond, filed by a contractor and its surety upon the appeal of a judgment against the contractor in favor of a subcontractor, held the surety liable for all amounts awarded in the litigation above the penal limitation set forth in the bond. The *Morrison Knudsen* court held:

> [The subcontractor's] argument ignores one of the most fundamental rules of suretyship: except in limited circumstances, a surety's liability cannot extend beyond the penal sum announced in the bond. ... The penal sum of the bond was $7,075,000 and [the surety's] obligations are thus capped at that amount.

*Morrison Knudsen*, 532 F.3d at 1072. Certainly, the most distinguishing factor between *Morrison Knudsen* and *McWaters* is that the former involves a supersedeas bond regarding which the surety took no action other than to issue the bond, and the latter involves a performance bond regarding

---

[4]The Court notes that the contracts analyzed in *McWaters* were governed by the Miller Act, 40 U.S.C. §§ 270a and 270b, whereas the contracts in the case are not. However, the *McWaters*' opinion as to American Surety Company's first defense does not appear to be analyzed pursuant to the Miller Act; in fact, the Tenth Circuit cites an Indiana Supreme Court case in support of its conclusion, *McDonald v. Calumet Supply Co.*, 19 N.E. 2d 567, 570-571 (Ind. 1939), *modified on other grounds*, 21 N.E. 2d 400 (Ind. 1939), which does not involve contracts governed by the Miller Act. *See McWaters*, 272 F.2d at 295.

which the surety affirmatively acted to take over the construction project upon its principal's default and finished the work. The opinion in *MorrisonKnudsen* neither cites nor even mentions *McWaters*; in fact, the only other Tenth Circuit opinion cited in *Morrison Knudsen*, *Maryland Cas. Co. v. Alford*, 111 F.2d 388, 390 (10th Cir. 1940), involved a bond issued pursuant to statue for the performance of a state official and, upon a finding of the official's negligence in connection with an automobile accident, whether the surety's liability was limited by the penal sum in the bond although different individuals asserted claims against the bond. *Id.* at 390-91. The *Alford* court held that the aggregate liability of the surety was limited to the penal sum named in the bond. *Id.* at 391. There is no mention in the *Alford* opinion that the surety took any action on the bond other than to issue it. The same is true for the other cases cited in the *Morrison Knudsen* opinion. *See Houston Fire & Cas. Ins. Co. v. E.E. Cloer General Contractor, Inc.*, 217 F.2d 906, 912 (5th Cir. 1954) (finding that the subcontractor defaulted in paying for all materials and labor performed in construction contract and that its surety was obligated to pay to the limit of the penal sum in the performance bond; there is no mention of the surety taking any action on the performance bond other than to issue it); *Massachusetts Bonding & Ins. Co. v. United States*, 97 F.2d 879, 881 (9th Cir. 1938) (finding that upon the default of a taxpayer to pay taxes owed by the extension granted on condition of the issuance of a bond, the surety was liable only for any amount up to the penal sum named in the bond; there is no mention of the surety taking any action on the bond other than to issue it).

As in this case, the opinion in *McWaters* specifically involves a performance bond regarding which the surety took over and completed the construction project upon the default of the bond's principal. Accordingly, absent any express or implied language in *Morrison Knudsen* overruling or superceding *McWaters*, the Court cannot conclude that the Tenth Circuit in *Morrison Knudsen*

intended to overrule or supercede *McWaters*. *See, e.g., Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 525-26 (11th Cir. 1997) (questioning the propriety of finding a Supreme Court opinion has been overruled when neither expressed nor implied by a subsequent opinion).

Second, the Court agrees with F&D that the *McWaters* opinion is silent as to certain material facts underlying the takeover of the construction project in that case – specifically, as to whether the surety reserved its rights as to any claims or defenses set forth in the performance bond. F&D attempts to distinguish *McWaters* from this case saying that there was no mention in *McWaters* whether the surety had options available upon the principal's default and whether, upon agreeing to take over the construction contract, the surety specifically reserved its rights under the bond. While the Court finds unclear[5] and, thus, unpersuasive F&D's argument concerning "options," the Court concludes the factual issue regarding whether the surety in *McWaters* reserved its rights under the performance bond are material. Certainly, opinions following *McWaters* and relied upon by White River note that sureties may protect themselves from waiver of the penal limitation upon takeover of the construction contract by "... includ[ing] a clause in the takeover agreement which limits the surety's liability in the course of performance to the original bond penalty." *Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 429 (S.D.N.Y. 2000).

In *County of Rockland*, the court found that a written takeover agreement contained no absolute limitation on liability to the penal sum in the bond, but provided only that the surety reserved all rights and defenses to claims by the obligee under the bond for "delay or other damages"; the court noted that such provision applied only to the principal's delay, not to the

---

[5]F&D attempts to distinguish *McWaters* saying that, unlike the surety in *McWaters*, F&D had options upon the default of the principal. However, the fact that F&D chose to do what the *McWaters* surety may have been required to do does nothing to distinguish *McWaters*' conclusion that when a surety "step[s] into the shoes of the subcontractor [it], by operation of law, [becomes] liable to the full extent of [the subcontractor's] liability." *See McWaters*, 272 F.2d at 296.

surety's. *Id.* at 430. However, the court also found that the surety reserved its "right and defense" contained in the bond providing, "the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract." *Id.* Accordingly, because the court determined that the construction contract contained no limit on the contractor's liability for damages caused by its delay, the court concluded both the contractor and the surety would become responsible for all damages caused by delay. *Id.*

Here, F&D argues that it reserved its rights and defenses asserted in the performance bond as to the penal sum limitation. In this case, it is undisputed that the parties entered into no takeover agreement. Thus, unlike in *County of Rockland* where the court found a written takeover agreement did not specifically contain a limitation on liability to the penal sum in the bond, F&D demonstrates here that White River acknowledged and accepted F&D's reservation of all rights and defenses under the bond, including the penal sum limitation, through written communications between the parties.

That is, after White River declared S&S in default in March 2006, White River and F&D engaged in discussions regarding the next steps under the contracts, payments bonds and performance bonds. During the course of those discussions, F&D (nicknamed "Zurich" in the correspondence) wrote to White River (through counsel) on June 9, 2006 asserting, "[f]rom Zurich's point of view, it is critical that Zurich be allowed to lead a completion effort, as soon as possible, under a full reservation of rights." June 9, 2006 Letter from Patrick Husted to Christopher McAnany, docket #551-2 at 24. The letter goes on to discuss the possibility of a takeover "under a full reservation of rights" with a liquidated damages exception. *Id.* The letter ends "[w]e write this letter reserving any and all rights available to Zurich either at law or in equity." *Id.*

A week later, F&D wrote to White River again, this time providing notice that "Zurich is

13

electing to undertake to perform and complete the construction contract pursuant to paragraph no. 4.2 of the Bond. Zurich is doing so under a full and complete reservation of rights of any and all defenses available to either it or S&S, either at law or in equity." June 16, 2006 Letter from Patrick Husted to Christopher McAnany, docket #551-2 at 26.  The letter ends "Zurich submits this letter reserving any and all rights it may have under law or in equity in regards to the Performance Bond, Payment Bond, or any other bonds issued with regard to the White River project." *Id.*

White River responded to this letter on June 29, 2006 confirming,

> On behalf of White River Village, LLP, ("White River") we acknowledge receipt of your letter, dated June 16, 2006, in which Fidelity & Deposit Company of Maryland ("Zu rich") has exercised its right to undertake performance and completion of the above-referenced Construction Contracts, as provided by ¶ 4.2 the subject AIA A-312 Performance Bonds, subject to the reservation of rights set forth in your letter. This will also confirm our understanding (acknowledged by your email of June 27, 2006) that Zurich's election to takeover performance and completion, as well as its reservation of rights, applies to both projects and all related bonds.

June 29, 2006 Letter from Christopher McAnany to Patrick Husted, docket #551-2 at 28.  Later, as the Project progressed, Jonathan Reed at White River wrote to Paul Eaves at F&D seeking advice as to "whether or not it is your position that the surety can discontinue work if the penal sum of the bond is reached." February 28, 2007 Letter from Jonathan Reed to Paul Eaves, docket #593-1.  Mr. Eaves responded the following week saying "it is the surety's position its liability under the bond, if any, cannot exceed the penal sum stated on the bond. The surety does not waive the penal sum limit of the individual bonds provided to White River Townhomes, LLC and White River Village, LLP." March 5, 2007 Letter from Paul Eaves to Jonathan Reed, docket #593-2.

Based upon these communications, the Court finds F&D clearly and specifically reserved its right to assert the penal sum limitation set forth in the performance bonds and White River acknowledged and accepted F&D's reservation.

White River argues that F&D's June 16, 2006 letter reserves rights and defenses only in the

14

event S&S was wrongfully terminated. Response, docket #570 at 16. While it is true F&D states in the letter that it reserves "all rights and defenses concerning such termination," it does so in addition to those reservations previously noted. Again, the letter clearly and specifically asserts a reservation of rights "in regards to the Performance Bond, Payment Bond, or any other bonds issued with regard to the White River project." Docket #75-6.

However, White River also argues that F&D's reservation of rights was a modification to the contract for which adequate consideration was not given. Citing an Illinois appellate decision, White River contends that a reservation of rights to a penal sum limitation is a modification to the original construction contract and must be supported by consideration. Response, docket #570 at 16 (citing *Village of Fox Lake v. Aetna Cas. & Sur. Co.*, 534 N.E.2d 133, 146 (Ill. App. 1989)). F&D did not respond to White River's argument in the present briefing.

"Generally, a modification to a contract requires consideration." *Hoagland v. Celebrity Homes, Inc.*, 572 P.2d 493, 494 (Colo. App. 1977) (citing *H&W Paving Co. v. Asphalt Paving Co.*, 364 P.2d 185 (Colo. 1961)). The Court agrees generally that a limitation of liability to a penal sum could be a modification to a construction contract upon the surety's takeover of the contract, assuming that the contract contains no such limitation. However, F&D makes no argument concerning modification by a reservation of a right to assert the penal sum limitation and neither party has provided a copy of the construction contract in the briefing; thus, the Court cannot determine whether it has been modified.

Moreover, even if true that the construction contract in this case were modified by F&D's reservation of rights, the Court finds a genuine dispute of material fact as to whether consideration for the modification is adequate. While F&D does not respond to this argument in the present briefing, it addressed the question of consideration in briefing previously filed in this case regarding

15

the penal sum limitation issue. *See* docket #75. In that previous briefing, F&D argued that even if the Court were to consider the opinion in *Village of Fox Lake*, that court reasoned that "had the surety been asked to perform additional work not included in the original contract, that would have constituted consideration for a reservation of the penal sum." *Id.* at 11. F&D asserted that by a simple comparison of a "punch list" and a "scope of work" document, "it was apparent that the work which would be required of F&D as the completing surety went far beyond the scope of the original contract." *Id.* The Court disagrees. A simple comparison of the documents describing work to be performed does not answer the question whether F&D actually performed additional work as consideration for the reservation of rights. Thus, even if the Court were to consider F&D's argument from previous briefing, the argument would be rejected.

Accordingly, the Court concludes that summary judgment is not appropriate here where genuine issues of material fact exist as to whether F&D's reservation of its right to assert the penal sum limitation in defense to White River's claims is valid, in that the Court cannot determine whether the reservation is a modification to the construction contract and, if so, whether adequate consideration was given in exchange for the modification. As such, the Court recommends that the District Court deny F&D's request for summary judgment finding that White River's damages are limited to the combined penal sum set forth in the subject performance bonds.

**II.     Damages Limitation**

F&D also seeks an order finding that White River's damages are limited to a total of $19,251.83, which is the difference between the combined penal sum of $4,318,500.00 minus the costs of $4,299,248.17 allegedly paid by F&D to complete the Project. F&D claims it has received no payments from White River relating to the Project and has incurred $4,299,248.17 in direct costs to complete the Project under the terms of the subject bonds and closeout of the contract, which

16

amount is $19,251.83 less than the penal sum expressly stated in the bonds. Motion, ¶ 10, docket #551 at 7. F&D argues that its direct cost to complete the Project, $4,299,248.17, was not disputed by White River during the arbitration and as such, cannot be disputed in this proceeding.

White River counters that it disputes "F&D's purported '$4,299,248.17 in direct costs to complete the Project' to the extent it includes costs for work performed by F&D through its contractor, Perini, beyond the terms of S&S's contract." Response, ¶ 3, docket #570 at 5. White River further contends that "such costs are within this Court's purview, not the arbitration tribunal's, and are properly disputed." *Id.* F&D makes no argument in reply to White River's position.

The Court agrees with White River. The arbitration tribunal in this matter was limited to addressing claims by F&D arising from the contracts between S&S and White River; thus, any disputes that arise outside of S&S's contracts, including disputes regarding costs to complete the Project by a subsequent contractor, presumably were not before the tribunal. *See* Final Award of Arbitrators, docket #436-1. As such, the Court must conclude that summary judgment is not proper to find undisputed the sum of $4,299,248.17 in costs allegedly paid by F&D to complete the Project. Consequently, the Court recommends that the District Court deny F&D's request for an order finding that White River's damages are limited in this case to a total of $19,251.83.

## **CONCLUSION**

Accordingly, the Court respectfully RECOMMENDS that the District Court **DENY** Defendant/Third Party Plaintiff Fidelity & Deposit Co. of Maryland's (F&D) Rule 56 Motion for Partial Summary Judgment on its Penal Sum Limitation Defense [filed November 7, 2013; docket #551] as set forth herein.

Dated at Denver, Colorado, this 30th day of January, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge